No. _____

# In the United States Court of Appeals for the Fifth Circuit

---

IN RE ASHLEY MAXWELL, ZACH MAXWELL, MISTIE SHARP, SHANNON THOMASON, AND SADIE WELDON,

*Petitioners.*

---

On Petition for a Writ of Mandamus from the United States District Court for the Western District of Texas, Austin Division
Case No. 1:22-cv-00859-RP

---

## PETITION FOR WRIT OF MANDAMUS

---

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Petitioners*

## CERTIFICATE OF INTERESTED PERSONS

Counsel of record certifies that the following persons and entities have an interest in the outcome of this case.

| Petitioners–Defendants | Petitioners–Defendants' Counsel |
|---|---|
| <ul><li>Ashley Maxwell</li><li>Zach Maxwell</li><li>Mistie Sharp</li><li>Shannon Thomason</li><li>Sadie Weldon</li></ul> | Jonathan F. Mitchell<br>MITCHELL LAW PLLC |

| Defendants | Defendants' Counsel |
|---|---|
| <ul><li>José Garza</li><li>Julie Renken</li><li>Susan R. Deski</li><li>Wiley B. "Sonny" McAfee</li><li>Fred H. Weber</li><li>Joe Gonzales</li><li>Toribio Palacios</li><li>K. Sunshine Stanek</li><li>Gocha Allen Ramirez</li><li>Bill D. Hicks</li><li>Ori T. White</li><li>Richard E. Glaser</li><li>Ryan Sinclair</li><li>Jacob Putman</li></ul> | Cynthia Contreras Gutierrez<br>CONTRERAS GUTIERREZ AND ASSOCIATES<br><br>Lisa V. Cubriel<br>Robert W. Piatt III<br>Bexar County District Attorney's Office<br><br>Josephine Ramirez-Solis<br>Leigh Ann Tognetti<br>Hidalgo County District Attorney's Office<br><br>J. Eric Magee<br>ALLISON, BASS & MAGEE, LLP<br><br>Heather Gebelin Hacker<br>Andrew B. Stephens<br>HACKER STEPHENS LLP<br><br>Leslie W. Dippel<br>Anthony J. Nelson<br>Patrick T. Pope<br>Travis County District Attorney's Office<br><br>R. Neal Burt<br>Jennifer Irlbeck<br>Lubbock County District Attorney's Office |

| Plaintiffs (Real Parties in Interest) | Plaintiffs' Counsel |
|---|---|
| <ul><li>Fund Texas Choice</li><li>Buckle Bunnies Fund</li><li>Clinic Access Support Network</li><li>Frontera Fund</li><li>Ghazaleh Moayedi</li><li>Jane's Due Process</li><li>Lilith Fund for Reproductive Equity</li><li>North Texas Equal Access Fund</li><li>The Afiya Center</li><li>West Fund</li></ul> | Jennifer R. Ecklund<br>Elizabeth G. Myers<br>Allyn Jaqua Lowell<br>John Atkins<br>Elizabeth Rocha<br>THOMPSON COBURN LLP<br><br>Alex Wilson Albright<br>Marcy Hogan Greer<br>ALEXANDER DUBOSE & JEFFERSON LLP |

| Respondent | |
|---|---|
| <ul><li>Judge Robert Pitman</li></ul> | |

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Petitioners*

ii

# TABLE OF CONTENTS

Certificate of interested persons ...................................................... i

Table of contents ........................................................................ iii

Table of authorities .................................................................... v

Statement concerning oral argument .......................................... viii

Statement of relief sought ........................................................... 1

Issues presented ......................................................................... 1

Statement of facts ...................................................................... 2

    I.    Texas's abortion laws ....................................................... 2

    II.   The district court proceedings .......................................... 5

        A.    Plaintiffs move for immediate summary judgment in an attempt to deny the SB 8 defendants discovery ...................... 13

        B.    The plaintiffs and the district court thwart the SB 8 defendants' discovery efforts ................................................. 14

        C.    The plaintiffs again demand an immediate ruling on their summary-judgment motion ...................................................... 17

Reasons the writ should issue ................................................... 22

    I.    The petitioners' entitlement to the writ is clear and indisputable ..... 22

        A.    The district court has a non-discretionary duty to ensure that it has jurisdiction before proceeding to the merits of a case ................................................................................... 22

        B.    The district court clearly abused its discretion by denying the SB 8 defendants meaningful discovery .............................. 25

        C.    The district court has a non-discretionary duty to enter a scheduling order that complies with Rule 16 .......................... 28

    II.   There is no adequate remedy by appeal, and mandamus is appropriate under the circumstances ................................. 29

    III.  The Court should certify the state-law abortion issues to the Supreme Court of Texas .................................................. 30

Conclusion ...................................................................................................... 32

Certificate of service ...................................................................................... 33

Certificate of compliance ............................................................................... 34

# TABLE OF AUTHORITIES

**Cases**

*B. Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. 1981) ........................................ 23

*Cheney v. U.S. District Court for the District of Columbia*,
    542 U.S. 367 (2004) ................................................................................... 25

*Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671 (Tex. 2006) ......................... 5

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ............................................. 24

*Davis v. Sharp*, 656 F. Supp. 3d 687 (W.D. Tex. 2023) ............................................ 11

*Department of Education v. Brown*, 600 U.S. 551 (2023) ........................................ 24

*Fund Texas Choice v. Paxton*, 658 F. Supp. 3d 377 (W.D. Tex. 2023) ........................ 4

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949) ..................................... 26

*Gras v. Stevens*, 415 F. Supp. 1148 (S.D.N.Y. 1976) ............................................... 12

*Hollis v. Itawamba County Loans*, 657 F.2d 746 (5th Cir. 1981) ............................... 12

*Howard Gault Co. v. Texas Rural Legal Aid, Inc.*,
    848 F.2d 544 (5th Cir. 1988) ..................................................................... 12

*In re Gee*, 941 F.3d 153 (2019) ......................................................... 22, 23

*In re Paxton*, 60 F.4th 252 (5th Cir. 2023) ..................................................... 7, 24

*In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc) ............... 22

*Kaspersky Lab, Inc. v. United States Dep't of Homeland Security*,
    909 F.3d 446 (D.C. Cir. 2018) .................................................................. 10

*Lance v. Coffman*, 549 U.S. 437 (2007) ......................................................... 19, 22

*Massachusetts v. Mellon*, 262 U.S. 447 (1923) ..................................................... 28

*McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992) ................................. 12, 19

*McCorvey v. Hill*, 385 F.3d 846 (5th Cir. 2004) ....................................................... 3

*MidCap Media Finance, L.L.C. v. Pathway Data, Inc.*,
    929 F.3d 310 (5th Cir. 2019) ..................................................................... 23

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc) ...................................... 27

*Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998) ........................... 23

*United States v. Hansen*, 599 U.S. 762 (2023) .................................... 26

*White v. United States*, 601 F.3d 545 (6th Cir. 2010) ............................... 10

*Whole Woman's Health v. Jackson*, 141 S. Ct. 2494 (2021) ...................... 27

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) ............................11

**Statutes**

42 U.S.C. § 1983 ............................................................passim

42 U.S.C. § 1988 .......................................................................8

Tex. Gov't Code § 311.036(a)......................................................3

Tex. Health & Safety Code § 170A.002(a) .................................2

Tex. Health & Safety Code § 170A.004(b)..................................2

Tex. Health & Safety Code § 170A.005 .....................................2

Tex. Health & Safety Code § 170A.007 .....................................2

Tex. Health & Safety Code § 171.201(4) ...................................4

Tex. Health & Safety Code § 171.204 .......................................4

Tex. Health & Safety Code § 171.207(a)....................................4

Tex. Health & Safety Code § 245.002(1) ................................ 2, 5

Tex. Penal Code § 1.04(a) ...................................................... 2, 4, 5

Tex. Penal Code § 1.07...............................................................5

Tex. Penal Code § 19.02.............................................................5

Tex. Penal Code § 19.06(2) ........................................................5

West's Texas Civil Statutes, article 4512.1 (1974) ...................4

West's Texas Civil Statutes, article 4512.2 (1974) ...................4

**Rules**

18 U.S.C. §§ 1461–1462...................................................... 20, 26

Fed. R. Civ. P. 16(b)(2) .............................................................6

Fed. R. Civ. P. 16(b)(3)(A) ................................................... 6, 19

Fed. R. Civ. P. 33(a)(1) ................................................................ 26

W.D. Tex. L. Civ. R. 16(a) .............................................................. 6

W.D. Tex. L. Civ. R. 16(c) .............................................................. 6

W.D. Tex. L. Civ. R. 33(b)(1) ........................................................ 15

**Other Authorities**

Black's Law Dictionary (11th edition) ....................................... 4

Iris Dimmick, *Abortion access advocates face imposters, legal threats as
trigger law nears*, San Antonio Report (August 1, 2022) ..................... 27

Ken Paxton, *Updated Advisory on Texas Law Upon Reversal of Roe Wade*,
June 27, 2022 .................................................................................. 3

13A Charles Alan Wright et al., *Federal Practice and Procedure* (3d ed.
2008 & Supp. 2021) ...................................................................... 10

# STATEMENT CONCERNING ORAL ARGUMENT

The petitioners do not believe that oral argument is necessary because the district court's errors are clear and indisputable, as is the petitioners' entitlement to the writ.

## Statement Of Relief Sought

Petitioners seek mandamus relief directing the district court to: (1) Resolve the petitioners' jurisdictional objections to this lawsuit before forcing them to respond to the plaintiffs' motion for summary judgment; (2) Allow them to take meaningful discovery from each of the plaintiffs that has sued them; and (3) Issue a scheduling order that accords with the requirements of Rule 16.

The petitioners also ask the Court to certify the state-law issues in this case to the Supreme Court of Texas before ruling on the mandamus petition, as the petitioners' jurisdictional objections turn on interpretations of state abortion statutes that the district court has no power to authoritatively resolve.

## Issues Presented

1. Whether the district court clearly and indisputably erred when it: (a) Refused to resolve the petitioners' jurisdictional objections before forcing them to respond to the plaintiffs' summary-judgment motion; (b) Denied the petitioners adequate discovery; and (c) Refuses to issue a scheduling order that complies with Rule 16.

2. Whether this Court should certify the issues of state abortion law to the Supreme Court of Texas before ruling on the mandamus petition.

## STATEMENT OF FACTS

### I.   TEXAS'S ABORTION LAWS

The law of Texas not only bans elective abortions but also penalizes individuals and organizations that help women leave the state to obtain abortions elsewhere. Each of the four relevant statutes—the state's "trigger ban," its pre–*Roe v. Wade* criminal abortion laws, the Texas Heartbeat Act, and the murder statute—restricts the behavior of abortion-assistance organizations in different ways.

1. The trigger ban provides, in relevant part:

> A person may not knowingly perform, induce, or attempt an abortion.

Tex. Health & Safety Code § 170A.002(a). "Abortion" is defined as:

> [T]he act of using or prescribing an instrument, a drug, a medicine, or any other substance, device, or means with the intent to cause the death of an unborn child.

Tex. Health & Safety Code § 245.002(1). Anyone who violates the trigger ban is subject to criminal sanctions,[1] civil penalties,[2] and loss of medical or health-care licenses.[3]

The trigger ban does not apply to abortions that occur entirely in another state. *See* Tex. Penal Code § 1.04(a). But the trigger ban will apply to out-of-state abortion providers who dispense abortion-inducing drugs if the patient ingests one of the drugs in Texas. *See id.* ("Texas has criminal jurisdiction to

---

1.   Tex. Health & Safety Code § 170A.004(b).
2.   Tex. Health & Safety Code § 170A.005.
3.   Tex. Health & Safety Code § 170A.007.

prosecute when: (1) either the conduct or a result that is an element of the offense occurs inside this state").[4] Abortion funds who assist these abortions are equally liable for the crime.

2. Texas never repealed its pre–*Roe v. Wade* abortion statutes, which became enforceable when the Supreme Court overruled *Roe*. *See* Ken Paxton, *Updated Advisory*, June 27, 2022, available at bit.ly/3X1uOme.[5] The pre-*Roe* statutes reach beyond the trigger ban by criminalizing conduct that "procures" an abortion:

> If any person shall designedly administer to a pregnant woman *or knowingly procure to be administered with her consent any drug or medicine*, or shall use towards her any violence or means whatever externally or internally applied, *and thereby procure an abortion*, he shall be confined in the penitentiary …

---

4. A drug-induced abortion involves two drugs that are taken 24–48 hours apart. The patient will typically ingest the first drug (mifepristone or mifeprex) at a clinic, and return home to ingest the second drug (misoprostol) 24–48 hours later.

5. In 2004, this Court held that Texas's pre-*Roe* abortion statutes were "repealed by implication." *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004). But section 2 of the Texas Heartbeat Act overrules *McCorvey*. *See* SB 8 § 2 ("Texas never repealed, either expressly or by implication, the state statutes enacted before … *Roe v. Wade* … that prohibit and criminalize abortion"). The Heartbeat Act also amends the Code Construction Act, which provides that: "A statute that regulates or prohibits abortion may not be construed to repeal any other statute that regulates or prohibits abortion, either wholly or partly, unless the repealing statute explicitly states that it is repealing the other statute." Tex. Gov't Code § 311.036(a).

West's Texas Civil Statutes, article 4512.1 (1974) (emphasis added). This imposes criminal liability on abortion funds that commit acts inside Texas that "procure" abortions, even when the "procured" abortion occurs out of state. *See* Tex. Penal Code § 1.04(a)(1); Black's Law Dictionary (11th edition) ("procure *vb.* (14c) 1. To obtain (something), esp. by special effort or means. 2. To achieve or bring about (a result)."). The pre-*Roe* statutes also impose criminal liability on those who "furnish[] the means for procuring an abortion knowing the purpose intended." West's Texas Civil Statutes, article 4512.2 (1974). This subjects abortion funds to criminal sanctions if their conduct inside Texas "furnishes the means for procuring an abortion"— regardless of where the abortion occurs.

3. The Texas Heartbeat Act (SB 8) prohibits abortion if a fetal heartbeat is detectable. But SB 8 does not impose criminal sanctions or administrative penalties, and it bans state officials from enforcing the law. *See* Tex. Health & Safety Code § 171.207(a). Instead, it authorizes private citizens to file civil-enforcement lawsuits against those who perform or assist post-heartbeat abortions. SB 8 applies only to abortions performed by Texas-licensed physicians.[6]

SB 8 does not apply to abortions that occur entirely outside Texas because it lacks a clear statement of extraterritorial effect. *See Coca-Cola Co. v.*

---

6. *See* Tex. Health & Safety Code §§ 171.201(4), 171.204; *Fund Texas Choice v. Paxton*, 658 F. Supp. 3d 377, 387 (W.D. Tex. 2023) ("S.B. 8 limits its coverage to abortions performed by Texas-licensed physicians.").

*Harmar Bottling Co.*, 218 S.W.3d 671, 682 (Tex. 2006). But SB 8 (like the trigger ban) will apply if a patient ingests an abortion-inducing drug in Texas after receiving it from an out-of-state provider. *See* Tex. Health & Safety Code § 245.002(1) ("abortion" includes "the act of using" any "drug" "with the intent to cause the death of an unborn child"). Abortion funds can be sued under SB 8 if they aid or abet abortions of this sort.

4. The murder statute prohibits any act that "intentionally or knowingly causes the death" of an unborn child,[7] although it exempts "lawful medical procedures" by licensed health care providers. *See* Texas Penal Code § 19.06(2). Any abortion prohibited by the trigger ban, the pre-*Roe* abortion statutes, or SB 8 will violate the murder statute, but only if the death of the fetus or the act that "intentionally or knowingly caused" the death occurred inside Texas. *See* Tex. Penal Code § 1.04(a).

## II.  THE DISTRICT COURT PROCEEDINGS

The plaintiffs include nine Texas abortion funds and one doctor who fear criminal prosecution for assisting out-of-state abortions. On August 23, 2022, they sued Attorney General Paxton and five district attorneys, seeking to enjoin them from enforcing the trigger ban and the pre-*Roe* abortion statutes against their desired activities. App. 1–90. The plaintiffs did not sue the petitioners in their initial complaint.

---

7.  Texas Penal Code § 19.02; *see also* Texas Penal Code § 1.07 ("'Individual' ... includ[es] an unborn child at every stage of gestation").

The rules of the Western District of Texas required these parties to submit a scheduling order "not later than 60 days after any appearance of any defendant." W.D. Tex. L. Civ. R. 16(c). Paxton appeared on September 22, 2022,[8] so the parties were required to submit a scheduling order by November 21, 2022. *See* Fed. R. Civ. P. 16(b)(3)(A); W.D. Tex. L. Civ. R. 16(a); http://bit.ly/3WKEdAo (Judge Pitman's scheduling-order template). The parties failed to submit the required scheduling order.

The district court was also required to enter a scheduling order that imposes deadlines for amending the pleadings and adding or joining additional parties, as well as timetables for conducting discovery and submitting summary-judgment motions. *See* Fed. R. Civ. P. 16(b)(2) ("The judge must issue the scheduling order as soon as practicable, but unless the judge finds good cause for delay, the judge must issue it … 60 days after any defendant has appeared."); W.D. Tex. L. Civ. R. 16(a) ("A scheduling order must be entered in every case"). The district court, in violation of Rule 16(b)(2) and Local Rule 16(a), failed to enter a scheduling order or find "good cause for delay" by November 21, 2022. The district court *still* has not entered the required scheduling order in this case.

In October of 2022, Attorney General Paxton sought mandamus when the district court refused to quash a subpoena to testify at a preliminary-injunction hearing, and refused to rule on Paxton's jurisdictional objections

---

8.   App. 7500.

before compelling his testimony. *See In re Paxton*, 60 F.4th 252 (5th Cir. 2023). This Court issued mandamus and directed the district court to quash the subpoena. *See id.* at 260. The Court also held that the district court "clearly erred by not first ensuring its own jurisdiction" before allowing the plaintiffs to subpoena Paxton. *Id.* at 254; *id.* (noting that Paxton had sought dismissal under Rule 12(b)(1) for lack of standing and sovereign immunity and); *id.* at 257–58 ("The district court had a non-discretionary duty to ascertain its jurisdiction by ruling on Paxton's [Rule 12(b)(1)] motion … before allowing Paxton to be subpoenaed."); *id.* at 261 (Higginbotham, J., concurring) ("[S]tanding—injury and redressability—here is not self-evident, and as a threshold matter jurisdiction must be addressed. This is rote.").

On February 24, 2023, the district court dismissed the claims against Paxton, but preliminarily enjoined the district-attorney defendants from enforcing Texas's pre-*Roe* abortion statutes. App. 303–354. The Court held that: (1) Paxton lacks authority to enforce the pre-*Roe* statutes and SB 8;[9] and (2) The trigger ban, which Paxton does enforce, could not (in the district court's view) be read to prohibit conduct "related exclusively to out-of-state abortions."[10] But the district court did not define "out-of-state abortions," and did not say whether the trigger ban applies when a patient ingests an abortion drug in Texas after receiving it from an out-of-state provider.

---

9. App. 331–334.
10. App. 320; *see also* App. 325 ("H.B. 1280 is not susceptible to a construction that it applies extraterritorially or penalizes those who facilitate an abortion which occurs outside Texas.").

The district court enjoined the DAs from enforcing Texas's pre-*Roe* abortion statutes because it held that those statutes were "repealed by implication"[11]—despite the provisions in SB 8 that explicitly declare that pre-*Roe* abortion statutes were "never repealed," and despite the amendments to the Code Construction Act that prohibit courts from finding implied repeals of a statutory abortion restriction.[12] In response to the district court's preliminary injunction, some (but not all) of the plaintiffs resumed their abortion-assistance activities in Texas. App. 367–368; App. 369.

On April 12, 2023, the plaintiffs moved for leave to file a second amended complaint that would add five private citizens as named defendants and bring a litany of claims against them challenging the constitutionality of the Texas Heartbeat Act. App. 7511. (We will call these private-citizen defendants the "SB 8 defendants" or "petitioners.") The district court granted the motion on April 20, 2023. App. 7512.

The second amended complaint sues the SB 8 defendants under 42 U.S.C. § 1983, claiming that each of these private citizens is violating the plaintiffs' constitutional and federally protected rights by "threatening" to sue them under SB 8. App. 357–362. The complaint also demands that the SB 8 defendants—who are private citizens of limited means—pay the plaintiffs' costs and attorneys' fees under 42 U.S.C. § 1988, threatening them

---

11. App. 346.
12. *See* note 5, *supra*.

with bankruptcy if the district court rules against them on any of the section 1983 claims. App. 432.

There are many problems with the plaintiffs' attempts to sue the SB 8 defendants under 42 U.S.C. § 1983. First, the plaintiffs lack Article III standing because every single abortion (and abortion-assistance activity) prohibited by SB 8 is independently criminalized by the trigger ban and the pre-*Roe* abortion statutes.[13] That means it is *impossible* for the abortion-fund plaintiffs to assist abortions in violation of SB 8, even if they want to violate the statute, because no Texas-licensed physicians[14] are willing to perform those abortions and subject themselves to criminal sanctions, civil penalties, and mandatory loss of licensure under the trigger ban or the pre-*Roe* abortion statutes. That will remain the case even if the courts declare SB 8 unconstitutional and enjoin every person in the world from filing civil-enforcement lawsuits against the plaintiffs.

SB 8 has been completely overtaken by the trigger ban and the pre-*Roe* abortion statutes, which outlaw every single abortion prohibited by SB 8 and then some by criminalizing: (1) Pre-heartbeat as well as post-heartbeat abor-

---

13. Most abortions and abortion-assistance activities outlawed by SB 8 are also covered by the murder statute. The only exception is for a drug-induced abortion in which a patient ingests the second abortion pill in Texas (thereby completing the abortion within state boundaries), if the unborn child had already been killed by the first abortion pill before the patient's return to Texas.

14. SB 8 applies only to abortions performed by Texas-licensed physicians. *See* note 6, *supra*.

tions; and (2) Abortions performed by anyone, not just Texas-licensed physicians. The following chart shows the relationship among the statutes:



Abortions and abortion-assistance activities prohibited by the pre-*Roe v. Wade* abortion statutes

Abortions and abortion-assistance activities prohibited by the Trigger Ban

Abortions and abortion-assistance activities prohibited by SB 8

The plaintiffs are not challenging the trigger ban, and a plaintiff lacks standing when a separate, unchallenged statute independently outlaws all of the conduct prohibited by the disputed law. *See* 13A Charles Alan Wright et al., *Federal Practice and Procedure* § 3531.5 (3d ed. 2008 & Supp. 2021) ("One law alone does not cause the injury if the other law validly outlaws all the same activity."); *Kaspersky Lab, Inc. v. United States Dep't of Homeland Security*, 909 F.3d 446, 465 (D.C. Cir. 2018) (no standing to challenge an agency directive when a separate (unchallenged) statute prohibits "all the same conduct as the directive—and then some."); *White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010) (no standing to challenge federal Animal Welfare Act's prohibition on cockfighting when "the states' prohibitions on cockfighting would remain in place notwithstanding any action we might take in

regard to the AWA."). The abortion-fund plaintiffs must also allege and prove that there are Texas-licensed physicians willing to violate SB 8 and risk the penalties imposed by the trigger ban, because otherwise it is impossible for abortion funds (or anyone else) to assist abortions prohibited by SB 8 regardless of what happens in this lawsuit. The plaintiffs have not done so at any stage of this litigation.

The plaintiffs also lack Article III standing because each of the SB 8 defendants has declared that they have no intention of suing the plaintiffs under SB 8—and they had no such intention when the plaintiffs sued them. App. 3412–3503; *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 48 (2021) ("Mr. Dickson argues that the petitioners lack standing to sue him because he possesses no intention to file an S. B. 8 suit against them. Mr. Dickson has supplied sworn declarations so attesting. . . . Accordingly, on the record before us the petitioners cannot establish 'personal injury fairly traceable to [Mr. Dickson's] allegedly unlawful conduct.' " (citations omitted)); *Davis v. Sharp*, 656 F. Supp. 3d 687, 689–90 (W.D. Tex. 2023) ("Defendants in this case have unequivocally renounced any intention to sue Plaintiffs under S.B. 8. With that, Plaintiffs no longer can establish an adequate injury, and the Court must … dismiss Plaintiffs' claims for lack of standing.").

In addition to the Article III standing problems, the plaintiffs cannot sue the SB 8 defendants under 42 U.S.C. § 1983 because a private citizen does not act "under color" of state law by filing (or threatening to file) a lawsuit—even when a state statute authorizes his suit. *See Howard Gault Co. v. Texas*

*Rural Legal Aid, Inc.*, 848 F.2d 544, 555 (5th Cir. 1988) ("The growers cannot be held liable in a § 1983 suit simply because they filed suit under Texas statutes and obtained a temporary restraining order."); *Hollis v. Itawamba County Loans*, 657 F.2d 746, 749 (5th Cir. 1981) ("[N]o state action is involved when the state merely opens its tribunals to private litigants."); *Gras v. Stevens*, 415 F. Supp. 1148, 1152 (S.D.N.Y. 1976) (Friendly, J.) ("[W]e know of no authority that one private person, by asking a state court to make an award against another which is claimed to be unconstitutional, is violating 42 U.S.C. § 1983.").

The *only* circumstance in which a private litigant may be sued for acting "under color of" state law is when he conspires or coordinates his efforts with state officials, or when there is "corruption of judicial power by the private litigant." *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992) (quoting *Earnest v. Lowentritt,* 690 F.2d 1198, 1200 (5th Cir. 1982)); *Howard Gault*, 848 F.2d at 555. The pleading makes no allegation that any of the SB 8 defendants is conspiring or coordinating with public officials, and each of them has submitted declarations stating that any private civil-enforcement lawsuits that they might file will be done on their own initiative and without consultation with any government officials. App. 3509–3528. So the section 1983 claims should be dismissed on the merits even if the plaintiffs could somehow find a way to surmount the Article III standing obstacles.

### A. Plaintiffs Move For Immediate Summary Judgment In An Attempt To Deny The SB 8 Defendants Discovery

On June 20, 2023, the SB 8 defendants moved to dismiss the plaintiffs' claims for lack of venue and improper joinder. The SB 8 defendants did not seek immediate dismissal under Rule 12(b)(1) because they wanted to take discovery on the Article III standing issues and have those issues litigated in the proper venue. On August 4, 2023—before the briefing on the motion to dismiss had been completed—the plaintiffs moved for leave to file a 38-page motion for summary judgment against the SB 8 defendants, along with 28 exhibits totaling 304 pages that the plaintiffs had unilaterally assembled. App. 766–1128. The SB 8 defendants protested that the plaintiffs could not move for summary judgment when the SB 8 defendants had no opportunity to take discovery and when the Court had not yet resolved the SB 8 defendants' jurisdictional and venue objections. App. 1129–1131. But the district court granted the plaintiffs' motion, observing that "Rule 56(b) expressly allows a party to move for summary judgment 'at any time until 30 days after the close of all discovery.'" App. 1132–1133.

The plaintiffs' summary-judgment motion was filed on September 11, 2023, which gave the SB 8 defendants only 14 days to respond under the local rules. App. 1134–1489. The SB 8 defendants immediately asked the district court to extend their deadline for responding until after the ruling on the venue objections. App. 1490–1494. The plaintiffs opposed the request, demanding that the SB 8 defendants immediately respond to their motion for

summary judgment without taking discovery and despite the unresolved venue objections. App. 1495–1504; App. 1514–1517. The SB 8 defendants also asked the Court to stay the summary-judgment briefing schedule until it ruled on the SB 8 defendants' request to extend their deadline. App. 1505–1509. The plaintiffs opposed that request as well. App. 1510–1513; App. 1518–1520.

On September 25, 2023, the district court denied the SB 8 defendants' motions and insisted that they file a Rule 56(d) motion instead. App. 1521–1522. The SB 8 defendants immediately filed a Rule 56(d) motion, which the plaintiffs opposed. App. 1523–1726. The district court administratively stayed the SB 8 defendants' deadline for responding to the plaintiffs' summary-judgment motion until it could rule on the Rule 56(d) motion. App. 1727.

### B.  The Plaintiffs And The District Court Thwart The SB 8 Defendants' Discovery Efforts

Meanwhile, out of concern that the plaintiffs and the district court would force them to respond to the plaintiffs' summary-judgment motion before they could take or complete discovery, the SB 8 defendants began serving written discovery demands on each of the ten plaintiffs. Outraged that the SB 8 defendants would seek discovery, the plaintiffs moved for protective orders in response to every single discovery request that the SB 8 defendants served.

The first defendant to serve discovery requests was Shannon Thomason, who demanded information about the plaintiffs' abortion-assistance activities and sought admissions that the plaintiffs had never violated SB 8 and that the SB 8 defendants had never threatened to sue the plaintiffs. App. 1538–1726. The plaintiffs moved for a protective order, claiming that Thomason's discovery requests were "irrelevant and harassing" and that they should not have to respond to any of them. App. 1728–1741. Mr. Thomason agreed to withdraw his initial discovery demands and serve new ones in an effort to accommodate some of the plaintiffs' objections. App. 2749; App. 2534–2702 (Thomason's revised discovery demands). Yet the plaintiffs continued to insist that they should not have to respond to *any* discovery in the case. App. 2703–2710.

On September 12, 2023, defendant Mistie Sharp served interrogatories asking the plaintiffs to "[i]dentify all persons who you believe have knowledge of relevant facts and identify the issues upon which you believe they have knowledge,"[15] an interrogatory pre-approved by the local rules. *See* W.D. Tex. L. Civ. R. 33(b)(1). On September 30, 2023, SB 8 defendant Zach Maxwell served written discovery requests concerning the plaintiffs' Article III standing. App. 2777–2795. The plaintiffs sought a protective order against these discovery demands as well, again insisting that they should be categorically immune from any discovery obligations. App. 2747–2759. They also

---

15.   App. 2775.

asked for a stay of all discovery, even though the plaintiffs had already moved for summary judgment and were trying to force the SB 8 defendants to respond before they could obtain discovery. App. 2756–2757. When the SB 8 defendants noticed plaintiff Ghazaleh Moayedi and subpoenaed Makayla Montoya-Frazier of the Buckle Bunnies Fund for depositions, the plaintiffs again moved for protective orders. App. 3059–3133; App. 3252–3280.

On December 8, 2023, the magistrate judge stayed all discovery and granted the protective orders because "the pending motions to dismiss raise 'preliminary questions that may dispose of the case' in its entirety." App. 3318. Two weeks later, on December 21, 2023, the district court denied all of the defendants' motions to dismiss and strictly limited the SB 8 defendants' ability to obtain discovery. The only discovery that the district court would allow was:

- Written interrogatories on each declarant in Plaintiffs' motion for summary judgment, not to exceed eight questions each.

- Depositions of each of these declarants, not to exceed two hours per deposition.

- No requests for documents without first fling a motion to compel, which must "describe in specific detail why the documents are necessary to contest Plaintiffs' assertion of subject-matter jurisdiction or defend the case on the merits."

App. 3348. The district court imposed these limitations because:

[T]he SB 8 Defendants have not shown why subject matter jurisdiction cannot be resolved on the pleadings. Although the SB 8 Defendants have not filed a 12(b)(1) motion, such motions are

commonly decided at the pleading stage, before extensive discovery takes place. Had the Court denied any SB 8 Defendant's motion to dismiss for lack of jurisdiction on the basis of an underdeveloped evidentiary record, then the SB 8 Defendants would have a colorable argument that discovery is necessary. But the SB 8 Defendants did not move to dismiss for lack of jurisdiction. It appears exceedingly likely that most of the subject-matter jurisdiction arguments can be resolved on a 12(b)(1) motion prior to discovery, as is the case with the Prosecutor Defendants. Plaintiffs need not answer thousands of discovery requests to assist in a jurisdictional inquiry that can, in all likelihood, be resolved on the pleadings.

App. 3346–3347. This was a clear indication that the district court wanted the SB 8 defendants to file a pre-discovery Rule 12(b)(1) motion, and that it would rule on that pre-discovery Rule 12(b)(1) motion before deciding whether additional discovery should be allowed.

### C. The Plaintiffs Again Demand An Immediate Ruling On Their Summary-Judgment Motion

After the district court's ruling of December 21, 2023, the plaintiffs again attempted to force the SB 8 defendants into responding to their motion for summary judgment, even though the SB 8 defendants had not yet filed their Rule 12(b)(1) motion, and even though no discovery had been conducted. On January 10, 2024, counsel for the plaintiffs e-mailed Jonathan F. Mitchell, counsel for the SB 8 defendants, and asked him to agree to a discovery deadline and briefing schedule on their motion for summary judgment. Mitchell explained that he had been retained to argue two Supreme Court cases in February (*Trump v. Anderson*, No. 23-719, and *Garland v. Cargill*, No. 22-976), and that his time in January and February would be consumed with

writing the briefs and preparing for oral argument in those cases. App. 3378. Mitchell also told the plaintiffs that he would file a pre-discovery Rule 12(b)(1) motion and motion for judgment on the pleadings after his Supreme Court arguments, and that he would take discovery from the plaintiffs if those motions were denied. App. 3375–3376. The plaintiffs told Mitchell that they would ask the Court to impose a discovery deadline of March 15, 2024. App. 3374. Mitchell asked them to wait until he finished with the *Trump* litigation on February 8, 2024. *See id.* The plaintiffs went ahead and filed the motion anyway. App. 3349–3362.

The SB 8 defendants objected to the plaintiffs' request, and argued that the district court must resolve their soon-to-be-filed jurisdictional objections before considering the plaintiffs' motion for summary judgment. The SB 8 defendants also said that it would be wasteful and inefficient to force them to conduct and complete discovery when the district court had previously observed that the SB 8 defendants' jurisdictional objections could be resolved on the pleadings without any need for discovery. App. 3397–3399.

On March 7, 2024, the district court granted the plaintiffs' motion in part and entered a "scheduling order" requiring the SB 8 defendants to complete all discovery by May 7, 2024, and respond to the plaintiffs' motion for summary judgment by May 21, 2024. App. 3411. This "scheduling order" does not comply with Rule 16, as it sets no deadline for amending the pleadings or joining or adding parties, nor does it set discovery deadlines or dispositive-

motion deadlines for the district-attorney defendants. *See* Fed. R. Civ. P. 16(b)(3)(A).

On April 8, 2024, each of the SB 8 defendants moved dismiss the plaintiffs' claims for lack of Article III standing. App. 3412–3503. Later that day, the SB 8 defendants moved for judgment on the pleadings, noting that private litigants (or would-be private litigants) cannot be sued under 42 U.S.C. § 1983 unless they conspire or coordinate their efforts with state officials, or unless there is "corruption of judicial power by the private litigant." *McCartney*, 970 F.2d at 47. On April 9, 2024, the SB 8 defendants moved to stay discovery and summary-judgment briefing until the district court resolved the Rule 12(b)(1) motions. App. 3536–3543 (citing *Lance v. Coffman*, 549 U.S. 437, 439 (2007) ("Federal courts must determine that they have jurisdiction before proceeding to the merits.")).

On April 16, 2024, the SB 8 defendants moved for leave to take discovery beyond the amount permitted in the district court's order of December 21, 2023. App. 3555–3562. They asked to serve interrogatories, requests for production of documents, and requests for admission on the following topics:

1. Whether and to what extent each of the plaintiffs has ever violated SB 8 in a manner that could expose itself to private civil-enforcement lawsuits;

2. The identity of the individual that the plaintiffs claim have been "chilled" and deterred from supporting the plaintiffs on account of the defendants' conduct;

3. Interrogatories requiring each plaintiff to identify the arguments and evidence that they will rely upon to prove each element of Article III standing and how the SB 8 defendants are acting "under color" of state law;

4. Whether and to what extent each of the plaintiffs has violated or is violating 18 U.S.C. §§ 1461–1462; and

5. Whether and to what extent each of the plaintiffs has violated or is violating the criminal abortion laws of Texas.

App. 3555–3558.

On April 18, 2024, the SB 8 defendants filed a Rule 56(d) motion, asking the Court to defer briefing on the plaintiffs' summary-judgment motion until it rules on the Rule 12(b)(1) and Rule 12(c) motions and allows the SB 8 defendants to conduct meaningful discovery. App. 3563–3588. The SB 8 defendants also argued that the plaintiffs' summary-judgment motion should be summarily denied because it presents no argument for Article III standing, and no argument or evidence for how the SB 8 defendants are acting "under color" of state law — even though the plaintiffs bear the burden of proof on each of those issues. App. 3573–3575.

On May 1, 2024, the district court denied the SB 8 defendants' Rule 56(d) motion, as well as their motion to stay discovery and summary-judgment briefing. App. 3636–3649. But it granted in part their motion for discovery, allowing them to serve only "interrogatories" on "[w]hether and to what extent each of the plaintiffs has ever violated SB 8 in a manner that could expose itself to private civil-enforcement lawsuits." App. 3644–3645. The district court denied the motion for discovery in all other respects, and

extended the deadline to respond to the plaintiffs' summary-judgment motion by one week, to May 28, 2024.

On May 6, 2024, Sadie Weldon served 11 interrogatories on each of the 10 plaintiffs. App. 3887–3977. The plaintiffs refused to respond to any of them, claiming that the only "interrogatory" that they must answer is the *issue* described in the court's order of May 1, 2024, even though this is not an interrogatory but merely a description of an issue on which the SB 8 defendants wanted to serve discovery. App. 3990–3992. On May 12, 2024, Weldon moved to compel. App. 3881–3998.

On May 14, 2024, the plaintiffs served responses to the court-issued "interrogatory" that they divined from its order of May 1, 2024. App. 4016–7418. Their answers were non-responsive and evasive, so the SB 8 defendants filed a separate motion to compel on March 17, 2024, demanding that each plaintiff provide a yes-or-no answer to whether they have violated SB 8 in the past. App. 4010–4015. Then the SB 8 defendants asked the district court to extend their deadline for responding to the plaintiffs' summary-judgment motion until 14 days after it ruled on the pending motions to compel. App. 7422–7428. The district court denied the motion, insisting that it would not move the May 28, 2024, deadline for responding to the plaintiffs' motion for summary judgment, despite the outstanding Rule 12(b)(1) motions and motions to compel discovery. App. 7429–7430.

## REASONS THE WRIT SHOULD ISSUE

Mandamus should issue because (1) the petitioners' right to the writ is clear and indisputable; (2) there is no other adequate means to obtain relief; and (3) the writ is appropriate under the circumstances. *In re Gee*, 941 F.3d 153 (5th Cir. 2019) (per curiam); *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc).

## I. THE PETITIONERS' ENTITLEMENT TO THE WRIT IS CLEAR AND INDISPUTABLE

The district court clearly and indisputably erred by: (1) Refusing to resolve the SB 8 defendants' jurisdictional objections before forcing them to complete discovery and respond to the plaintiffs' summary-judgment motion; (2) Denying the SB 8 defendants adequate discovery; and (3) Refusing to issue a scheduling order as required by Rule 16 and Local Rule 16(a).

### A. The District Court Has A Non-Discretionary Duty To Ensure That It Has Jurisdiction Before Proceeding To The Merits Of A Case

When a district court violates a non-discretionary duty, then the petitioner has a clear and indisputable right to mandamus relief. *See In re Gee*, 941 F.3d 153, 159 (5th Cir. 2019). Federal district courts have a non-discretionary duty to ensure that they have subject-matter jurisdiction before proceeding to the merits of the case. This duty has been long established in the binding precedent of the Supreme Court and the Fifth Circuit. *See Lance v. Coffman*, 549 U.S. 437 (2007) ("Federal courts must determine that they have jurisdiction before proceeding to the merits."); *Steel Co. v. Citizens for a Better Envi-*

*ronment*, 523 U.S. 83 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (citation omitted)); *MidCap Media Finance, L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310 (5th Cir. 2019) ("[W]e have an independent obligation to assess our own jurisdiction before exercising the judicial power of the United States."); *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548–49 (5th Cir. 1981) ("[T]he trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits."); *Gee*, 941 F.3d at 171 ("[B]efore any federal court can analyze the 'cumulative effects' of Louisiana's laws, we must know which laws Plaintiffs have standing to challenge. Again, jurisdiction first.").

The district court is flouting this non-discretionary duty by refusing to ensure that it has jurisdiction over this case before ordering the SB 8 defendants to complete discovery and respond to the plaintiffs' dispositive motion. The jurisdictional problems in this case are clear and obvious: The plaintiffs do not and cannot have Article III standing when: (1) The trigger ban and the pre-*Roe* statutes independently criminalize all of the abortion-assistance activities prohibited by SB 8; and (2) Each of the SB 8 defendants has disclaimed an intent to sue the plaintiffs under SB 8. *See supra* at pp. 9–11. The plaintiffs' motion for summary judgment does not even discuss Article III

standing,[16] even though the plaintiffs bear the burden of proving standing with respect to every claim and every defendant that they have sued. *See DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352 (2006) ("'[A] plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief' that is sought." (citation omitted)). The plaintiffs and the district court do not get to skate past these jurisdictional problems and proceed directly to dispositive briefing.

This is not the first time that the district court has put jurisdictional issues on the back burner in an effort to accommodate the plaintiffs' litigation demands. Just six months ago, this Court issued a writ of mandamus in this very litigation and rebuked the district court for "not first ensuring its own jurisdiction" before allowing the plaintiffs to subpoena the Attorney General. *See Paxton*, 60 F.4th at 260; *see supra* at p. 7. Now the district court is back to its old ways, allowing jurisdictional objections to linger while demanding that the SB 8 defendants complete discovery and respond to a summary-judgment motion that it has no jurisdiction to consider. The Court should (once again) remind the district court that federal courts "have an obligation to assure ourselves of litigants' standing under Article III before proceeding to the merits of a case." *Department of Education v. Brown*, 600 U.S. 551, 560 (2023) (citations and internal quotation marks omitted).

---

16.   App. 1134–1180.

### B. The District Court Clearly Abused Its Discretion By Denying The SB 8 Defendants Meaningful Discovery

The plaintiffs were determined from the outset of this case to deny the SB 8 defendants any discovery and have the case litigated entirely on the 28 exhibits that they had attached to their motion for summary judgment. App. 766–1128. And the district court has largely accommodated this abusive and unreasonable demand. When the magistrate judge granted the plaintiffs' motion to stay all discovery on December 8, 2023, it claimed that the pending motions to dismiss might render discovery unnecessary. App. 3318. And when the district court strictly limited the discovery that the SB 8 defendants could conduct, it claimed that the SB 8 defendants could file a pre-discovery Rule 12(b)(1) motion based on the pleadings alone. App. 3346–3347. Yet now the plaintiffs and the district court are demanding that SB 8 defendants complete *all* of their discovery within the strict limits imposed by the district court's order of December 21, 2023. The district court's refusal to allow meaningful discovery is a "clear abuse of discretion" that warrants mandamus relief. *Cheney v. United States District Court*, 542 U.S. 367, 380 (2004).

Defendants who are sued in federal court are entitled to defend themselves by taking discovery and developing a factual record that will rebut the plaintiffs' claims. The district court's order of December 21, 2023, does not allow the SB 8 defendants sufficient discovery to defend themselves. It does not allow them to serve any interrogatories on any plaintiff except Ghazaleh Moayedi. It allows interrogatories to be served only on the plaintiffs' declar-

ants, rather than the plaintiffs themselves, even though the rules of civil procedure do not allow interrogatories to be served on non-party declarants. *See* Fed. R. Civ. P. 33(a)(1) (interrogatories may be served only on a "party"). It does not allow the SB 8 defendants to take Rule 30(b)(6) depositions of any of the nine organizational plaintiffs that have sued them. It does not allow any requests for admission to be served. It bans the SB 8 defendants from requesting documents unless they first file a motion to compel that "describe[s] in specific detail why the documents are necessary to contest Plaintiffs' assertion of subject-matter jurisdiction or defend the case on the merits." App. 3348. It is unheard of for a Court to deny a defendant the right to depose and serve interrogatories on a plaintiff that is suing him, and nothing in this case can justify such a drastic departure from the rules of civil procedure.

The district court also abused its discretion by forbidding the SB 8 defendants to take discovery into the plaintiffs' abortion-assistance activities. App. 3645–3648. The SB 8 defendants intend to rebut the plaintiffs' First Amendment claims by showing that the plaintiffs are criminal organizations whose speech activities fall outside the First Amendment as "speech integral to unlawful conduct." *United States v. Hansen*, 599 U.S. 762, 783 (2023); *see also Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949). Yet the district court refused to allow discovery into the extent to which the plaintiffs violate 18 U.S.C. §§ 1461–1462 by aiding or abetting the shipment or receipt of abortion-related paraphernalia. App. 3645–3648. The district court also

barred discovery into whether the plaintiffs violate Texas's criminal abortion laws by aiding or abetting illegal self-managed abortions (which the Buckle Bunnies Fund publicly admits to doing),[17] or by aiding or abetting drug-induced abortions in which either of the two abortion pills is swallowed or ingested in Texas. App. 3645–3648. This, too, is a "clear abuse of discretion" that warrants mandamus relief.

The plaintiffs and the district court have claimed throughout this litigation that the SB 8 defendants do not need discovery because the plaintiffs' claims involve "pure questions of law." App. 3345 (district court); App. 3609 (plaintiffs). That is false. The plaintiffs are not "challenging" SB 8; they are suing the SB 8 defendants under 42 U.S.C. § 1983 and accusing *them* of violating their constitutional rights while acting "under color" of state law.[18] *See*

---

17. *See* Iris Dimmick, *Abortion access advocates face imposters, legal threats as trigger law nears*, San Antonio Report (August 1, 2022), https://bit.ly/3R6S3ad ("[T]he Buckle Bunnies Fund . . . helps Texans access and pay for abortions. That includes paying for transportation to a state where abortion is still legal, sharing information about abortion pills and guiding women through their self-managed abortions").

18. There is no such thing as "challenging" a statute, even though courts sometimes use nomenclature suggesting that litigants challenge statutes rather than the conduct of the named defendants that they have sued. The plaintiffs' court filings repeatedly and falsely assert that they are "challenging" SB 8, yet a court cannot direct any relief at the statute and can restrain only the behavior of the SB 8 defendants. *See Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves."); *Okpalobi v. Foster*, 244 F.3d 405, 426 n.34 (5th Cir. 2001) (en banc) ("An injunction enjoins a defendant, not a statute.").

*Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("If a case for preventive relief be presented, the court enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding."). The plaintiffs must therefore prove with factual evidence that Ashley Maxwell, Zach Maxwell, Mistie Sharp, Shannon Thomason, and Sadie Weldon are violating each of the plaintiffs' constitutionally protected rights—and that they are doing so "under color" of state law. That is not a "pure question of law"; it requires factual evidence of the behavior (or intended behavior) of each of the SB 8 defendants. And the SB 8 defendants are entitled to take discovery to prove that Ashley Maxwell, Zach Maxwell, Mistie Sharp, Shannon Thomason, and Sadie Weldon are not doing anything to the plaintiffs that violates their constitutional rights.

### C. The District Court Has A Non-Discretionary Duty To Enter A Scheduling Order That Complies With Rule 16

The "scheduling order" that the district court issued on March 7, 2024, does not comply with Rule 16, as it sets no deadline for amending the pleadings or joining or adding parties, nor does it set discovery deadlines or dispositive-motion deadlines for the district-attorney defendants. App. 3411. The plaintiffs can still amend their pleadings and join new parties even though the SB 8 defendants' discovery window has closed—and even though the SB 8 defendants must respond to the plaintiffs' summary-judgment motion in eight days. When the SB 8 defendants moved for judgment on the pleadings on May 13, 2024, the plaintiffs claimed the motion was improper

because the district court had not yet set a deadline for amending the pleadings, and therefore the pleadings had not "closed" within the meaning of Rule 12(c). App. 3589 n.1. It is absurd that the court-imposed discovery deadline for the SB 8 defendants has already passed while plaintiffs remain free to amend their pleadings or join new parties.

The district court must comply with Rule 16 and Local Rule 16(a) and enter a proper scheduling order. That scheduling order must set deadlines for the plaintiffs to amend their pleadings and add parties. It must also ensure that the SB 8 defendants' jurisdictional objections are considered and resolved before the Court and the parties proceed to the merits of the case.

## II. There Is No Adequate Remedy By Appeal, And Mandamus Is Appropriate Under The Circumstances

The SB 8 defendants lack an adequate remedy by appeal because the district court has already closed the window for discovery and is demanding that they respond to a summary-judgment motion that it has no jurisdiction to consider. The SB 8 defendants cannot obtain the discovery that they want by waiting until the district court enters judgment against them and appealing, because the appellate court will dismiss the plaintiffs' claims for lack of Article III standing rather than remand for additional discovery. Nor can the SB 8 defendants obtain any remedy on appeal for the needless impositions that the plaintiffs and the district court are subjecting them to.

If the district court wants to ignore or postpone resolution of the jurisdictional problems, rather than dismissing this case at the outset, then the SB 8 defendants have the right to take discovery from the plaintiffs who are harassing them with this meritless lawsuit. They cannot vindicate that right by riding things out in the district court and appealing an adverse judgment. And the SB 8 defendants will not be able to appeal at all if the district court belatedly grants their Rule 12(b)(1) motions after forcing them to respond to the plaintiffs' motion for summary judgment.

For the same reasons, a writ of mandamus is appropriate. The Court should issue the writ and direct the district court to: (1) Resolve the petitioners' jurisdictional objections to this lawsuit before forcing them to respond to the plaintiffs' motion for summary judgment; (2) Allow them to take meaningful discovery from each of the plaintiffs that has sued them; and (3) Issue a scheduling order that accords with the requirements of Rule 16. If the Court exercises its discretion not to issue the writ,[19] then we respectfully ask that the Court's opinion make clear that the district court should take each of these steps.

## III. The Court Should Certify The State-Law Abortion Issues To The Supreme Court Of Texas

The jurisdictional issues in this case turn on the meaning of Texas abortion statutes that only the state judiciary can resolve. And because jurisdiction must be resolved before a federal tribunal can proceed to the merits, it is

---

19. *See Gee*, 941 F.3d at 170–71.

imperative that the federal judiciary secure an authoritative resolution of the relevant state-law questions before instructing the district court on mandamus to resolve the jurisdictional issues this case. The district court, for example, claims that the pre-*Roe* statutes have been "repealed"—even though SB 8 makes clear that they are not[20]—and the defendants' jurisdictional objections hinge in part on whether pre-*Roe* statutes independently criminalize everything that SB 8 prohibits.

Before ruling on the petition for mandamus, the Court should stay the district-court proceedings and certify each of the following issues to the Supreme Court of Texas:

1. Whether the Texas pre-*Roe* abortion statutes have been repealed by implication;

2. Whether every abortion and abortion-assistance activity prohibited by SB 8 is independently criminalized by the trigger ban and the pre-*Roe* abortion statutes; and

3. Whether the trigger ban, the pre-*Roe* abortion statutes, and SB 8 apply to abortions in which a patient ingests an abortion-inducing drug inside Texas after obtaining that drug from an out-of-state provider.

---

20. *See* notes 11–12, *supra*.

## Conclusion

The petition for writ of mandamus should be granted. The Court should certify the questions described in Part III to the Supreme Court of Texas.

Respectfully submitted.

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I certify that on May 20, 2024, this petition was served via e-mail on counsel for the respondents and transmitted to the clerk of the Court. A copy will be sent to Judge Robert Pitman of the Western District of Texas. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Petitioners*

# CERTIFICATE OF COMPLIANCE

with type-volume limitation, typeface requirements,
and type-style requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 7,764 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

 /s/ Jonathan F. Mitchell
Dated: May 20, 2024                                     JONATHAN F. MITCHELL
*Counsel for Petitioners*